**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

PAUL ZACK and JUDITH
ZACK,

                Plaintiffs,

    v.

McLAREN HEALTH
ADVANTAGE, INC.,

                Defendant.

Case No. 17-11253
Hon. Terrence G. Berg

**ORDER GRANTING PLAINTIFFS' MOTION FOR
JUDGMENT IN ITS FAVOR ON THE ADMINISTRATIVE
RECORD AND REMANDING FOR BENEFITS
DETERMINATION**

## I.  Introduction

Judith Zack required surgery by a specialist to repair a serious and recurring hiatal hernia.  The specialist surgeon she needed did not participate in her husband's, Dr. Paul Zack's, health insurance plan, which was offered by McLaren Heath Advantage, Inc. The plan paid full benefits for "in-plan" doctors but only 60% of a "reasonable and customary amount" for "out-of-plan" doctors.  The plan itself does not say what "reasonable and customary amount" means or how it would be calculated.  When the Zacks submitted their bill for $27,986.00, they received an explanation of benefits notice indicating they would be reimbursed for $726.79.  After trying to appeal

1

this determination of benefits and failing, the Zacks (Plaintiffs) brought this lawsuit against McLaren (Defendant) under § 502(a)(1)(B) of the Employment Retirement Security Act, 29 U.S.C. § 1132(a)(1)(B) ("ERISA").

The parties have filed cross motions for judgment on the administrative record. As set forth below, the Court grants Plaintiffs' motion, denies Defendant's motion, and remands the case to the Plan Administrator for full and fair consideration of Plaintiffs' claim for reimbursement.

## II. Background

On March 8, 2016, Plaintiff Judith Zack underwent laparoscopic surgery to correct a hiatal hernia. Dkt. 16 at Pg ID 534–35. Her husband, Plaintiff Paul Zack, is currently employed as a physician at McLaren Medical Group. *Id.* at Pg ID 531. Both Plaintiffs were participants in the McLaren Health Advantage Plan on March 8, 2016. *Id.*

Dr. Constantine Frantzides performed the procedure. *Id.* at Pg ID 535. At the time of Plaintiff's surgery, Dr. Frantzides was a professor of surgery at the University of Chicago and Chairman of the Department of Surgery at Weiss Memorial Hospital in Chicago. Dkt. 11 at Pg ID 275 (AR, D-000008). Dr. Frantzides is a leading expert on the type of procedure Judith Zack required. *Id.* He was

one of the first surgeons in the United States to perform laparoscopic surgery, and he conducted the very first "prospective, randomized trial of laparoscopic mesh repair of large hiatal hernias" in the world. *Id*. Dr. Frantzides also had specific experience with re-do laparoscopic hernia repair—important because Plaintiff had already undergone surgery to repair this hernia in 1999. *Id*. at Pg ID 276 (AR, D-000009).

Dr. Frantzides does not participate in the McLaren Health Advantage insurance plan. *Id*. For Out-of-Plan providers, Defendant reimburses participants 60% of the "Reasonable and Customary"[1] fee for the specific procedure performed. Dkt. 11 at Pg ID 422 (AR, D-000155). Dr. Frantzides billed Plaintiff a total of $27,986.00 for two billing codes—the aforementioned laparoscopic hiatal hernia repair and an accompanying esophagus dilation. *Id*. Plaintiff submitted her benefits claim to Defendant after the procedure. In this claim, Plaintiff submitted the billing codes for the procedures as determined by Dr. Frantzides: 43450 and 43282 with modifier 22. Dkt. 11 at Pg ID 297 (AR, D-000030).

---

[1] The term "reasonable and customary" is a specific term of art in the insurance industry and will be discussed further below. The Plan does not contain a definition of the term "reasonable and customary"; the payment calculation methodology was not disclosed to Plaintiffs until Defendant submitted its Motion for Judgment on the Administrative Record. Dkt. 15 at Pg ID 463.

To determine the reimbursement amount of Plaintiff's claim, the Plan Administrator first concluded that Dr. Frantzides, who performed the surgery, is not within the McLaren Health Advantage network (i.e., he is an "Out-of-Plan provider"), Dkt. 11 at Pg ID 298 (AR, D-000031), and thus plaintiff was responsible for the "difference between what the [Out-of-Plan provider] charges for the service and [the Plan's] allowable amount,[2] known as balance-billing," under the terms of her Plan. *Id.* at Pg ID 283 (AR, D-000016). Under Plaintiff's Plan and the accompanying McLaren Claims Department Procedure Manual, all claims submitted to Defendant by an Out-of-Plan provider are sent to a third-party, Zelis, which attempts to negotiate the invoice amount with the provider and then advises Defendant on what amount was ultimately charged to a Plan member. Dkt. 15 at Pg ID 463.

On May 18, 2016, Defendant notified Plaintiffs that the Reasonable and Customary reimbursement rate determined for procedure codes 43282 and 43450 were $1,451.40 and $96.01 respectively. Dkt. 11 at Pg ID 298 (AR, D-000031). Defendant subtracted Plaintiffs' deductible and co-insurance from this amount to come to the final amount of reimbursement, $726.79. *Id.* Neither the May 18

---

[2] At some points, the Plan uses the term "allowable amount" to describe the amount of benefits paid for out of plan doctors; at other points the Plan uses the term Reasonable and Customary amount. At no point does the Plan explain how these amounts are determined.

letter nor the text of the Plan explained what method Defendant used to calculate the Reasonable and Customary amount. In Defendant's cross motion for judgment on the administrative record filed before this Court, Defendant offered the following explanation: the Plan "simply applied the reasonable and customary charges set forth in its Fee Schedule for Billing Codes 43282 and 43450" to determine the reimbursable amount of Plaintiff's claim. Dkt. 15 at Pg ID 476. The relevant "Fee Schedule" was not attached to Defendant's motion and no such schedule can be found in the administrative record. Defendant further explained in its cross-motion: "the reimbursement amount is a median of what McLaren pays its In-Plan providers for that kind of service," Dkt. 15 at Pg ID 463. This indicates that the allowable fee is determined by calculating an *average* derived from various fees charged by In-Plan providers for the same kind of surgery. No schedule of such in-Plan fees, or other kind of information conveying how the reasonable and customary amount is determined, was ever produced in this litigation.

Likewise, there is nothing in the record that shows whether Defendant, in determining the reasonable and customary amount, ever considered the "modifier 22" Dr. Frantzides applied to the billing code 43282. Dkt. 11 at Pg ID 309 (AR, D-000042). Healthcare providers use modifier 22 as an appendix to the procedure's billing code to denote that the procedure was more difficult or complicated

than usual. *See* Medicare Claims Processing Manual, 20.4.6 Payment Due to Unusual Circumstances (Modifiers "-22 and "-52") (May 31, 2018) https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/clm104c12.pdf. Defendant thus reimbursed Plaintiffs at 60% of the Reasonable and Customary amount it had determined less Plaintiffs' deductible. The total amount of benefits paid was $726.79. *Id.* at Pg ID 298 (AR, D-000031).

Plaintiffs appealed the claim decision to the McLaren Appeals Committee. Specifically, Plaintiffs challenged Defendant's determination of the Reasonable and Customary amount on two grounds: (1) that it was objectively too low given the provider's charge;[3] and (2) that Defendant had not applied modifier 22 to the billing code for the procedure when determining the appropriate reimbursement amount. Dkt. 11 at Pg ID 275 (AR, D-000008). Defendant denied Plaintiffs' appeal, upholding the Plan Administrator's initial determination. *Id.* at Pg ID 279 (AR, D-000012).[4]

---

[3] At this time, Plaintiffs were unaware that Defendant calculated the Reasonable and Customary amount based on an average of what Defendant pays its in-network providers for the same procedure.

[4] Defendant's denial on appeal does not directly address Plaintiffs' challenge, which was directed to how the Plan calculated the Reasonable and Customary amount for reimbursement of Out-of-Plan services. The appeal decision states only that Dr. Frantzides is an Out-of-Plan provider and therefore that Plaintiffs would be reimbursed at Out-of-Plan rates (60% of the reasonable and customary fee). But Plaintiffs did not challenge the fact that they would only be

Plaintiff then filed this action on April 21, 2017, renewing the two arguments above and adding a claim that Defendant had violated the terms of ERISA by failing to provide Plaintiffs with a copy of the fee schedule used to determine the Reasonable and Customary amount for the procedures she had. Dkt. 2 at Pg ID 6. Plaintiffs amended their Complaint on June 8, 2017 to properly name Defendant, McLaren Health Advantage Inc. Dkt. 6.

On October 16, 2017, Defendant contacted Plaintiffs' counsel and requested that Plaintiffs voluntarily dismiss their claim. Dkt. 15 at Pg ID 455. When Plaintiffs refused, Defendant filed its Motion for Judgment on the Administrative Record asking that the Court affirm the administrative decision below by denying Plaintiffs' appeal for Plan benefits and dismissing Plaintiffs' Complaint with prejudice. Dkt. 15 at Pg ID 465. Plaintiffs filed their own Motion for Judgment on the Administrative Record on November 11, 2017. Dkt. 16. Courts do not use summary judgment procedures for deciding benefit claim denials; rather, parties can file cross motions for judgment on the administrative record as they have done here. *Wilkins*, 150 F.3d at 618; *accord Lee v. MBNA Long Term Disability & Benefit Plan*, 136 F. App'x 734, 743 (6th Cir. 2005).

---

reimbursed at a rate of 60% of the Reasonable and Customary amount—they challenged the basis for determining that amount.

## III. Standard of Review

The Court reviews de novo "the legal question of whether the procedure employed by a plan administrator in terminating benefits meets the requirements of § 1133." *Houston v. UNUM Life Ins. Co. of Am.*, 246 F. App'x 293, 299 (6th Cir. 2007) (citing *McCartha v. Nat'l City Corp.*, 419 F.3d 437, 444 (6th Cir. 2005). Therefore, on Plaintiffs' first claim, that Defendant's benefit and appeal denials were procedurally deficient under 29 U.S.C. § 1133, the Court employs de novo review.

Parties disagree regarding which standard of review this Court ought to apply to the substantive benefit determination Defendant made, which is the subject of Plaintiffs' second and third claims. Plaintiffs argue that the Plan administrator's denial of their benefit claims should be reviewed *de novo* under *McCartha*, 419 F.3d at 444. Defendants argue the denial of benefits should be reviewed for whether it was arbitrary and capricious under *Firestone Tire and Rubber Company v. Bruch*, 489 U.S. 101, 115 (1989).

Under *McCartha*, a denial of benefits is reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan" in which case it is affirmed if it is "rational in light of the plan's provisions." *McCartha*, 419 F.3d at 441 (citing

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989);[5] *Marks v. Newcourt Credit Group Inc.*, 342 F.3d 444, 456–57 (6th Cir. 2003) (internal quotations omitted)); *accord Wilkins v. Baptist Healthcare Sys.*, 150 F.3d 609, 616 n.4 (6th Cir. 1998); *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996); *Pransch v. The Guardian Life Insurance Co. of America*, No. 16-10723, 2017 WL 4054174, at *1 (E.D. Mich. Sept. 14, 2017).

Defendant argues that the Summary Plan Description ("the Plan"), Dkt. 6-1, grants Defendant discretionary authority to determine eligibility for benefits and that the Court should review its decision under the arbitrary and capricious standard. The Court agrees.

The Plan lists McLaren Health Care Corporation as the Plan Administrator and Defendant, McLaren Health Advantage Inc., as the Claims Administrator and the "Named Fiduciary for Post-Service Claim Appeals." Dkt. 6-1 at Pg ID 161. The Plan also explicitly states: 1) "The Plan Administrator and other fiduciaries of the Plan (including any named fiduciary for claim appeals), have the requisite discretionary authority and control over the Plan to require deferential judicial review of its decisions, as set forth by the U.S. Supreme Court in <u>Firestone Tire & Rubber Co. v. Bruch</u>," Dkt. 6-1 at

---

[5] The *McCartha* court reviewed compliance with § 1133 de novo but the substantive benefit determination using arbitrary and capricious review because the plan at issue gave the administrator discretion to interpret its terms.

Pg. ID 162; and 2) "The Claims Administrator shall have sufficient discretionary authority with respect to all undertakings related to or in connection with its pre-approval, concurrent, and claims determinations, as well as any appeals determinations, so as to require that any court adjudicating the Claim Administrator's determinations must do so under a deferential standard of review, as set forth by the U.S. Supreme Court in <u>Firestone Tire & Rubber Co. v. Bruch</u>." Dkt. 6-1 at Pg ID 204.

This language is sufficient to confer discretion on administrators warranting arbitrary and capricious review. *See Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 457 (6th Cir. 2003) (applying arbitrary and capricious review where plan language gave the plan administrator the power to "make the rules and regulations necessary to administer the Plan and . . . interpret the terms of the Plan, determine eligibility for benefits and to determine the amount of such benefits").

Finally, Section 9(a) of the Plan ("Claims Information"), which details the "post-service claims" procedure, instructs that "[a]ll claims should be reported promptly and *must give proof of the nature and extent of the expense.*" Dkt. 6-1 at Pg ID 198 (emphasis added). This Circuit has interpreted language involving "proof of loss" as indicating the claims administrator to whom a participant

is instructed to submit that "proof of loss" has full discretion to administer the plan. *Leeal v. Continental Casualty Co.*, 17 F. App'x 341, 343 (6th Cir. 2001).

The Court therefore reviews Defendant's substantive decision to deny benefits under the arbitrary and capricious standard of review; a highly deferential standard. *Yeager*, 88 F.3d at 380. But it has also kept in mind the potential conflict of interest that can arise where, as here, Defendant both funds and administers the plan, Dkt. 6-1 at Pg. ID 161. *See Marks*, 342 F.3d at 457 (citing *Bruch*, 489 U.S. at 115; *Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 847 n.4 (6th Cir. 2000)). The court "must accept a plan administrator's rational interpretation of a plan even in the face of an equally rational interpretation offered by the participants." *Morgan v. SKF USA*, 385 F.3d 989, 992 (6th Cir. 2004).

Finally, the Court notes that Defendant construes a portion of Plaintiffs' Motion for Judgment on the Administrative Record as a "procedural challenge," a mechanism by which plaintiffs in denial of benefit cases may obtain additional discovery beyond the administrative record. Dkt. 17 at Pg ID 606. Procedural challenges were due to be filed in this Court no later than September 7, 2017. Consequently, if Plaintiffs were raising such a challenge in their motion for judgment on the administrative record, it would be untimely.

However, Plaintiffs are not raising this type of procedural challenge under ERISA.

While Plaintiffs do argue that Defendant's procedure violated ERISA, that claim is not the "procedural challenge" requesting discovery that Defendant makes it out to be. Defendant admits, "Discovery may be available to resolve a procedural challenge, which includes an alleged lack of due process afforded by the administrator or alleged bias on its part." *Id.* (internal citations and quotation marks omitted). But Plaintiffs are not asking for additional discovery. They make the argument that Defendants must provide a copy of their fee schedule and other benefit determination information as part of their denial of benefits and denial of appeal pursuant to 29 U.S.C. § 1133.[6] This argument is distinct from allegations of bias or an incomplete administrative record, which Plaintiffs do not make.

Because Plaintiffs are not asserting a "procedural challenge" as ERISA case law uses that term—alleging bias in the decision-making process or an incomplete administrative record—Defendant's

---

[6] Defendant first disclosed that there *was* a fee schedule and that reimbursement amounts were determined according to the median amount paid to in-Plan providers in its Motion for Judgment on the Administrative Record, filed on November 10, 2018. Dkt. 15. Before that date, Plaintiffs could not have brought a "procedural challenge" relating to the failure to provide such a fee schedule, as they were not aware of it.

argument is irrelevant. Pursuant to the above analysis, in conducting this review of Defendant's benefit denial determination, the Court will only consider evidence that was presented to the administrator below. *Marks*, 342 F.3d at 457 (6th Cir. 2003).

## IV. Analysis

The court "may either award benefits to the claimant or remand to the plan administrator" if it determines that the administrator erroneously denied the claimant's benefit. *Shelby Cnty. Health Care Corp.*, 581 F.3d at 373. Remand is the appropriate remedy "where the plan administrator's decision suffers from a procedural defect or the administrative record is factually incomplete." *Id.* Where the plan administrator comes to the wrong conclusion based on the facts in the record, it is appropriate to award the claimant a benefit. *Id.* Here, Plaintiffs have not specified an amount to which they believe they are entitled—only that the amount determined to be reasonable and customary ought to be higher. Consequently, the Court will remand this case to the plan administrator for full and fair consideration of Plaintiff's claim. Upon remand, Defendant must consider the correct and complete billing codes—including modifiers— and provide a specific explanation of the reasonable and customary fee calculation in any subsequent benefit or appeal adjudication. In addition, because the Plan governing the relationship between the parties does not provide a definition of the term "Reasonable and

Customary amount," on remand this term must be interpreted according to its ordinary meaning—that is, an amount determined based on the prevailing market rates for a given procedure in the relevant geographical area.[7]

Plaintiffs present three arguments on appeal. First, Plaintiffs argue that Defendant violated ERISA § 503 (29 U.S.C. § 1133) and its accompanying regulations by failing to notify Plaintiffs of its pricing methodology and failing to disclose its pricing schedule along with its benefit and appeal denials. Dkt. 16 at Pg ID 543. Second, they argue that Defendant's use of its own negotiated rates to determine the reasonable and customary fee for procedures was substantively incorrect, rising to the level of arbitrary and capricious. *Id.* at Pg ID 545. Finally, Plaintiffs argue that Defendant's failure to process their claim with the correct and complete billing code— that is, failing to include the modifier 22—was also arbitrary and capricious. *Id.* Plaintiffs have met their burden with respect to these three claims.

The Court addresses each argument below.

---

[7] The Court takes no position on whether, consistent with ERISA, a Plan may define the term "reasonable and customary amount" in some other manner, such as by reference to its in-plan provider fees. Here, because the Plan contains no definition, on remand it must apply the plain and ordinary meaning that a reasonable participant reading the Plan would be likely to understand.

**a. Did Defendant violate the notice and document production requirement of ERISA § 503 (29 U.S.C. § 1133) and its accompanying regulations by failing to notify Plaintiffs of its pricing methodology and failing to disclose its pricing schedule as part of its benefit and appeal denials?**

Section 503 of ERISA requires that a Plan administrator who denies a claim must:

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. §1133.

A plan administrator "need only substantially comply" with these procedural requirements in order to fulfill their "essential purpose" and avoid remand from a reviewing court. *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 436 (6th Cir. 2006). In determining substantial compliance with § 503 (codified at 29 U.S.C. §1133) the court "considers all communications between an administrator and plan participant to determine whether the information provided was sufficient under the circumstances." *Id.* (citing *Marks*, 342 F.3d at 461). Additionally, "[w]hen claim communications as a whole are

sufficient to fulfill the purposes of § 1133 the claim decision will be upheld even if a particular communication does not meet those requirements." *Id.* (citing *Kent*, 86 F.3d at 807).

### i. *Notice and document production requirements for the initial benefit denial*

Plaintiffs argue that the plan administrator did not substantially comply with § 1133's notice requirements. The regulations promulgated pursuant to this section of ERISA require that an adverse benefit determination notification include:

(i)    The specific reason(s) for the adverse determination;

(ii)    Reference to the specific plan provisions on which that determination was based;

(iii)    A description of any additional materials or information necessary so that the claimant can perfect the claim;

(iv)    A description of the plan's review procedures including the applicable time limits and a statement that the claimant has a right to bring a civil action under Section 502 of ERISA following the internal review of an adverse benefit determination.

(v)    In the case of a group health plan—[8]

---

[8] "The term 'group health plan' means an employee welfare benefit plan (as defined in section 3(1) of the Employee Retirement Income Security Act of 1974

> (A) If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of the rule, guideline, protocol, or other similar criterion will be provided free of charge to the claimant upon request;

29 C.F.R. § 2560.503-1(g)(1)(i)–(v)(A).

Plaintiffs' adverse benefit determination came in the form of a one-page "Explanation of Benefits" containing the dates of service, the charges for the procedures she had, the ineligible amounts, the co-pay amounts due, and the amount of benefits paid. Dkt. 11, Pg ID 298 (AR, D-000031). Under a line entitled "Inel Code Description" are the words "NET" and "NON-COVERED/SERVICES PROVIDED BY OUT OF NETWORK DOCTOR." The form also includes instructions on how to file an appeal as well as notification of the

_____

[29 U.S.C. 1002(1)]) to the extent that the plan provides medical care (as defined in paragraph (2) and including items and services paid for as medical care) to employees or their dependents (as defined under the terms of the plan) directly or through insurance, reimbursement, or otherwise." 42 U.S.C. § 300gg-91(a)(1). "The terms 'employee welfare benefit plan' and 'welfare plan' mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits. . ." 29 U.S.C. § 1002(1). McLaren Health Advantage is a "group health plan" under these definitions and is therefore subject to the disclosure requirements in 29 C.F.R. § 2560.503-1(g)(1)(v)(A).

claimant's right to bring a civil action under ERISA. Although the Explanation of Benefits does not specifically reference the plan provision on which the "services provided by out of network doctor" reason for denial is based, neither party disputes that the Plan differentiates between In-Plan and Out-of-Plan providers or that Plaintiff knew that Dr. Frantzides was an Out-of-Plan provider. *See* Dkt. 16 at Pg ID 536–37.

Notably, the adverse benefits determination provides no materials that might assist Plaintiffs in understanding how Defendant determined the reimbursement amount, such as Defendant's fee schedule setting the Reasonable and Customary Fees—information that would have assisted Plaintiffs on appeal.[9]

Defendant points out that the plan documents state that claims for services by Out-of-Plan providers will receive the lowest amount of reimbursement. This much is disclosed in the plan itself; it is not an internal rule but is rather a term of the plan that has already been disclosed to Plaintiffs. Of course, Plaintiffs never disputed that Dr. Frantzides was an Out-of-Plan provider, or that such providers

---

[9] The fee schedule, or Defendant's method of calculation if no printed fee schedule exists, would appear to be precisely the kind of information that should be provided under 29 C.F.R. § 2560.503-1(g)(1)(v)(A), because the calculation of the Reasonable and Customary amount was an "internal rule, guideline, protocol, or other similar criterion." Defendant acknowledges as much in its briefing by pointing out that the benefit amount was determined by a particular criterion. *See* Dkt. 15 at Pg ID 463 ("The reimbursement amount is a median of what McLaren pays its In-Plan providers for that kind of service.").

would receive lower reimbursements than In-Plan providers. Their dispute was over the Reasonable and Customary amount the Plan used to determine the amount of benefits to be paid to an Out-of-Plan provider. Dkt. 11 at Pg ID 275 (AR, D-000008); Dkt. 11 at Pg ID 294 (AR, D-000027); Dkt. 16 at Pg ID 530.

The relevant regulation requires the Plan to provide "a description of any additional materials or information necessary so that the claimant can perfect the claim." 29 C.F.R. § 2560.503-1(g)(1)(iii). For an insured person seeking to make a claim regarding whether the Plan's "reasonable and customary" amount charged for a particular procedure is appropriate, knowing the method the Plan uses to calculate the reasonable and customary amount and the Plan's fee schedule would certainly have helped Plaintiffs "perfect the claim." Likewise, the regulation requires the Plan to provide any "criterion . . . relied upon in making the adverse determination," 29 C.F.R. § 2560.503-1(g)(1)(v)(A), and under these circumstances the method the Defendant uses to calculate the Reasonable and Customary amount, and any fee schedule, would appear to be that kind of criterion. With this information, Plaintiffs would have been able to argue on appeal that the service received was improperly categorized or the amount determined reasonable and customary was improperly calculated.

## ii. *Notice and document production requirements for the appeal denial*

The ERISA regulation governing the information Defendant is required to include in any appeal denial is similar to the regulation governing notification of an adverse benefit determination. In pertinent part, it requires that the appeal denial include:

(1) The specific reason(s) for the denial;

(2) Reference to the specific plan provision(s) on which the denial is based;

(3) A statement that the claimant may receive upon request and for free reasonable access to and/or copies of all documents, records, and other information relevant to the claimant's benefits claim;

(4) (i) a statement describing any voluntary appeal procedures offered by the plan and the claimant's right to obtain the information about such procedures as well as a statement that the claimant has a right to bring a civil suit under Section 502(a) of ERISA.

. . .

(5) In the case of a group health plan—

(i) If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a state-

ment that such rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of the rule, guideline, protocol, or other similar criterion will be provided free of charge to the claimant upon request;

. . .

(iii) The following statement: "You and your plan may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of labor Office and your State insurance regulatory agency."

29 C.F.R. § 2560.503-1(j)(1)–(5).

Here, the appeal denial states "Plan provisions require that services from a provider who does not directly participate with Health Advantage will be reimbursed at the Out-of-Plan benefit level, pages 10-12 and 14-15 of the Summary Plan Description (attached)." Dkt. 11 at Pg ID 279–85. (AR, D-000012–18). Again, Plaintiffs never disputed the benefit level of their reimbursement—specifically, 60% of the reasonable and customary amount. Dkt. 16 at Pg ID 530. What they disputed was the Reasonable and Customary amount itself. *Id.*

Plaintiffs claim that the information included in the benefit denial and appeal denial are insufficient to substantially comply with the regulations for adverse benefit determinations and appeal de-

nial notifications because they do not expressly disclose that Defendant used its own negotiated fee schedule in determining the Reasonable and Customary rate for reimbursement for Plaintiff's Out-of-Plan procedures, nor do they include a copy of that fee schedule. Dkt. 16 at Pg ID 544.

In support of their position, Plaintiffs cite two district court cases from this Circuit: *Bio-Medical Applications of Kentucky, Inc. v. Coal Exclusive Co., LLC*, 782 F. Supp. 2d 438, 443 (E.D. Ky. 2011), and *Spectrum Health, Inc. v. Good Samaritan Employers Assoc., Inc. Tr. Fund*, No. 1:08-CV-182, 2008 WL 5216025, at *4 (W.D. Mich. Dec. 11, 2008).

In both of these cases, plan administrators refused claimants' requests for information related to the pricing methodology (i.e. the fee schedules) that were used to calculate the rates for reimbursing their out-of-plan services. In *Bio-Med*, the plaintiff, a healthcare provider, requested access to the defendant's pricing methodology for "more than six years," and the defendant consistently denied such access. 782 F. Supp. at 443. The court remanded the case because the Plan "failed to provide [the provider] with the precise methodology on how [the patient's] claims were repriced." *Id.* at 448. Such information was necessary, the court found, because otherwise the provider "lacked the information to directly challenge

[the Plan's] conclusions." *Id.* The court found support for its decision in a Department of Labor advisory opinion issued in 1996, where the agency determined that "Section 104(b)(2) [of ERISA] requires the furnishing" of a pricing methodology "upon written request." Op. Dep't of Labor No. 96-14A (Jul. 31, 1996).

In *Spectrum Health*, the court found numerous procedural errors had occurred in the Plan's denial of health care benefits to Spectrum on the ground that certain charges exceeded the Plan's definition of reasonable and customary charges. 1:08-CV-182, 2008 WL 5216025, at *8. In that case, the Plan had "developed its own nationwide database establishing 'usual, reasonable, and customary' charges through its experience auditing the charges of numerous medical care providers," *Id.* at *10, but had not provided this information to the plaintiff. In addition to pointing out problems with how the values in the database were determined, the court found these errors to be "compounded by the fact that [the Plan] did not provide [Plaintiff] access to this source" and that Spectrum was thereby prevented from challenging the Plan's decision to reject the charges because it had no "access to the data with which these charges were compared." *Id.* The defendant's errors were so fundamental that the court in *Spectrum* simply awarded the entire disputed benefits amount to the Plaintiff. *Id.* at *7.

In this case, Plaintiffs never requested Defendant's fee schedule or an explanation to the method for calculating reasonable and customary fees prior to filing their claim—or at least, no such request is reflected in the record. Plaintiffs could only deduce the Reasonable and Customary amounts used by Defendant (but not how they were determined) when they saw the amounts that were approved for payment on Defendant's claim adjudication notice. Dkt 11 at Pg ID 298 (AR, D-000031). Because Plaintiffs did not request this information, however, their claim is distinguishable from those in *Bio-Med* and *Spectrum Health*. Here, the essence of Plaintiffs' claim is that they had no way to know that Defendant would use a median of its own in-plan negotiated rates in order to determine the Reasonable and Customary rates applicable for reimbursing out-of-plan charges, and that Defendant was obliged under ERISA to provide such information. Dkt. 16 at Pg ID 538. That claim is substantially different from the claims in the cases cited above.

In response, Defendant repeatedly states that Plaintiffs had access to the Plan's distinctions between In-Plan and Out-of-Plan providers and that the reason given for the denial of Plaintiffs' claim was procedurally adequate: that Dr. Frantzides is an Out-of-Plan provider. But Plaintiffs do not dispute that Dr. Frantzides was an Out-of-Plan provider or that choosing such a provider decreases the percentage of the provider's fee that is reimbursed. Dkt. 11 at Pg

ID 294 (AR, D-00027). Plaintiffs have always acknowledged Dr. Frantzides was Out-of-Plan—their dispute is over *the method of calculation of the reasonable and customary fee* upon which Defendant based its reimbursement decision. The central question is therefore whether ERISA and its accompanying regulations require full disclosure of pricing methodology absent a request from the insured. In circumstances such as those presented here, where the plan participant specifically challenges the calculation of the Reasonable and Customary amount for reimbursement, the Court holds that ERISA requires disclosure of pricing methodology as part of benefit and appeal denials.

The Sixth Circuit has made it clear that generic, conclusory reasons for denial of benefits do not meet the requirement of § 1133 to provide "specific reasons for the denial." *See Houston*, 246 F. App'x at 300 (finding that insurance company did not substantially comply with § 1133 when it stated the same generic denial in the benefit and appeal determinations, but for different reasons each time). "[T]he persistent core requirements of review intended to be full and fair include knowing what evidence the decision-maker relied upon, *having an opportunity to address the accuracy and reliability of that evidence*, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision." *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 689 (7th Cir.

1992) (emphasis added) (quoting *Brown v. Retirement Committee of Briggs & Stratton Retirement Plan*, 797 F.2d 521 (7th Cir. 1986)); *accord Houston*, 246 F. App'x at 300.

While *Houston* addressed a complete denial of disability benefits, its reasoning applies in the instant case. Here, Plaintiffs had no opportunity to address or question the accuracy of the Reasonable and Customary amount either during the benefits process, on appeal, or in their motion in this Court because Defendant did not provide them with the information needed to make such a challenge. This is not a full and fair review. Indeed, while Defendant finds fault with Plaintiffs for failing to "explain *how* or *why* they believe that [the Reasonable and Customary] determination was incorrect. . ." Dkt. 15 at Pg ID 481 (emphasis in original), this should be no surprise because Defendant did not tell them *how* or *why* the Reasonable and Customary amount was calculated in the first place.

This conclusion finds support in governing regulation. 29 C.F.R. § 2560.503-1(j)(5)(i) requires disclosure of any "internal rule, guideline, protocol, or other similar criterion [that] was relied upon in making the adverse determination." Here, Defendant clearly relied upon an internal criterion for determining how much of the Out-of-Plan fees would be covered in making the adverse determination, but did not disclose that criterion to Plaintiffs. Under these circumstances, the Court cannot conclude that Defendant complied with

§ 1133's requirement to explain the specific reasons for the denial during its initial adjudication of Plaintiffs' claim or its appeal denial.

Although the Sixth Circuit requires only "substantial compliance" with § 1133, "[t]he question is whether [the plan participant] was supplied with a statement of reasons that under the circumstances of the case permitted a sufficiently clear understanding of the administrator's decision [so as] to permit effective review." *Jones v. Iron Workers Local 25 Pension Fund*, No. 14-10031, 2014 U.S. Dist. LEXIS 159718, at *28 (E.D. Mich. Nov. 13, 2014) (quoting *Moore v. LaFayette Life Ins. Co.*, 458 F.3d 416, 436 (6th Cir. 2006)). Based on the analysis above, the Court finds that Defendant has not substantially complied with ERISA's notice and document production requirements. In order to comply with ERISA, where a plan participant is challenging the calculation of the reasonable and customary reimbursement amount, a plan provider must disclose its method of calculating that reasonable and customary amount, including any fee schedule used, if one exists. 29 C.F.R. § 2560.503-1(g)(1)(v)(A) and (j)(1)(5)(i) compels this result.

Plaintiffs are therefore entitled to judgment in their favor on their first claim.

**b. Was Defendant's denial of Plaintiffs' benefits arbitrary and capricious because it used the in-plan negotiated rates to determine the reasonable and customary amount for out-of-plan procedures and because it failed to consider the "modifier 22"?**

Plaintiffs contend that Defendant acted arbitrarily and capriciously by (1) using its own negotiated fee schedule to determine the reasonable and customary amount of reimbursement; and (2) failing to apply the "modifier 22" appended to the billing code for the procedure.

An administrative decision survives arbitrary and capricious review if it is "rational in light of the plan's provisions." *Perry v. United Food and Commercial Workers Dist. Unions 405 and 442*, 64 F.3d 238, 242 (6th Cir. 1995) (citing *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir. 1991)). While the arbitrary and capricious standard is a deferential one, it is "not . . . without some teeth." *Brown v. United of Omaha Life Ins. Co.*, 661 F. App'x 852, 855 (6th Cir. 2016) (citation and quotation marks omitted). "A plan administrator must, '[i]n interpreting the provisions of a plan . . . adhere to the plain meaning of its language, as it would be construed by an ordinary person.'" *Id.* (quoting *Shelby Cty. Health Care Corp. v. Southern Council of Indus. Workers Health and Welfare Trust Fund*, 203 F.3d 926, 934 (6th Cir. 2000)).

In order to be rational, a decision must be based on the information presented to the plan administrator. *See, e.g.*, *Lanier v. Metropolitan Life Ins. Co.*, 692 F. Supp. 2d 775, 777–78 (E.D. Mich. 2010) (finding that failure to consider all of the available information in the record was arbitrary and capricious); *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 297 (6th Cir. 2005) (finding arbitrary and capricious decision-making where an administrator "seemed to ignore" medical conclusions in the administrative record that supported the plaintiff's claim); *Schacht v. BASF Corporation*, No. 11-cv-10029, 2013 WL 1285928, at *3 (Mar. 28, 2013 E.D. Mich.) (finding that a decision based on the medical record before the plan administrator was not arbitrary and capricious).

i. *Defendant's use of its own negotiated fee schedule*

The Plan states: "Any time you receive services from provider in [the Out-of-Plan] category you are responsible for the difference between what the provider charges for the service and *our allowable amount*, known as balance billing." (emphasis added) Dkt. 11 at Pg ID 283 (AR, D-000016). It further provides that Plaintiffs are entitled to a benefit of 60% of the "reasonable or customary amount," but does not, as Plaintiffs note, define either define term. *Id.* at Pg ID 422 (AR, D-000155). Plaintiffs argue they had no way of knowing

29

that Defendant would determine the Reasonable and Customary amount by using the Plan's own negotiated fee schedule—rather than, for example, the market rate for other providers in the relevant geographic area. Dkt. 16 at Pg ID 530–31. As mentioned above, Defendant did not disclose how it determined the Reasonable and Customary amount until filing its Motion for Judgment on the Administrative Record before this Court. In that pleading, for the first time, Defendant stated, "The reimbursement amount is a median of what McLaren pays its In-Plan providers for that kind of service." Dkt. 15 at Pg ID 463.

Insurance companies frequently use "Reasonable and Customary" (sometimes called "Usual and Customary," "Usual, Customary, and Reasonable," or "UCR") to describe the amount the company will reimburse a plan participant who goes out of network for medical care. *See, e.g.*, *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 628 (2d Cir. 2008); *Delta Dental Plan v. Mendoza*, 139 F.3d 1289, 1291 (9th Cir. 1998); *Bio-Medical Applications*, 782 F. Supp. 2d at 444–45). Insurance providers ordinarily determine the Reasonable and Customary amount for a given procedure with reference to the prevailing market rates charged for that procedure in the relevant geographic area. *See, e.g.*, *Geddes v. United Staffing Alliance Employee Medical Plan*, 469 F.3d 919, 930 (10th Cir. 2006) ("When calculating payments to non-network providers, healthcare

administrators typically rely on rate schedules assembled from a survey of average treatment charges in a given geographic region." (citing *Hickman v. Gem Ins. Co.*, 299 F.3d 1208, 1210 (10th Cir. 2002); *Schwartz v. Oxford Health Plans, Inc.*, 175 F. Supp. 2d 581, 589 (S.D.N.Y. 2001))).

There are several resources that insurance companies frequently use to determine the Reasonable and Customary amount for a given procedure. *See, e.g.*, *Garber v. United Healthcare*, No. 15-cv-1638, 2016 U.S. Dist. LEXIS 58160 (E.D.N.Y. May 2, 2016) ("United [Healthcare] utilizes a database maintained by Fair Health, Inc., an independent, non-profit corporation (the 'Fair Database') to determine the UCR for various medical procedures."); *see also Fallick v. Nationwide Mutual Ins. Co.*, 162 F.3d 410, (6th Cir. 1998) (noting as factual background that Nationwide uses a database composed of the "prevailing health care charge [] for each medical and/or surgical procedure performed in a given geographical area" submitted by "hundreds of insurance carriers"); *see also Krauss v. Oxford Health Plans, Inc.*, 418 F. Supp. 2d 416, 428–29 (S.D.N.Y. 2005) (upholding insurance company's use of Ingenix, a database of provider charges for the purpose of determining the UCR).

The common practice of using such market-based data to determine Reasonable and Customary rates for out-of-plan providers

caused the Tenth Circuit in *Geddes v. United Staffing Alliance Employee Medical Plan*, 469 F.3d 919 (10th Cir. 2006) to conclude that "interpreting a 'customary' charge in the medical market as synonymous with the discounted rate negotiated by a health plan with its preferred providers is a significant deviation from industry custom." *Id.* at 930.[10]

At the same time, it is going too far to say, as Plaintiffs do, that Defendant's use of its own fee schedule is "neither the result of a deliberate, principled reasoning process nor supported by any evidence of record." Dkt. 16 at Pg ID 545. Defendant's use of its own fee schedule does appear to be its standard practice. Dkt. 15 at Pg ID 463. Use of this policy in general is not, on its face, arbitrary and capricious.

---

[10] It is worth noting that if Defendant had used one of these widely available resources, Plaintiffs' reimbursement amount would likely have been higher. The Court searched the Plaintiffs' billing code for the hiatal hernia repair, CPT 43282, in the FAIR database and found an "Out-of-Network/Uninsured Price" of $5,238.00, much higher than the Reasonable and Customary amount Defendant calculated at $1451.40. *See* FAIRHealth Consumer, *Find a Medical Cost* (August 28, 2018) https://www.fairhealthconsumer.org/estimate-costs/step-1. Plaintiff would have been reimbursed at 60% of $5,238.00 (less her deductible), rather than at 60% of $1451.40. The consumer FAIR database freely available online does not include an option to add modifier 22—had Defendant considered the evidence related to the modifier on the billing code, the reimbursement amount would likely have been even higher. *See Medicare Claims Processing Manual*, 20.4.6 Payment Due to Unusual Circumstances (Modifiers "-22 and "-52") (May 31, 2018) https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/clm104c12.pdf.

Nevertheless, Defendant was consistently evasive and non-responsive to Plaintiffs' argument that the rate used was *not* reasonable and customary and refused to disclose how it determined that amount. This non-responsiveness *is* evidence of arbitrary and capricious decision-making.

The language of insurance plans varies greatly. Courts often interpret plans that do, unlike Defendant's plan, contain specific definitions of the term "reasonable and customary amount." *See, e.g.*, *Garber*, No. 15-cv-1638, 2016 U.S. Dist. LEXIS 58160 (E.D.N.Y. May 2, 2016). Where the plan at issue does not contain a definition of Reasonable and Customary, several courts of appeals have found that the administrator's interpretation of that term must comport with a plain reading. In *Geddes,* for example, the Tenth Circuit considered a Plan with language almost identical to the instant case and concluded that interpreting "reasonable and customary" rates as equivalent to the Plan-negotiated, lower than market rates for in-Plan providers was arbitrary and capricious. 469 F.3d at 931. *See also HCA Health Service of Georgia, Incorporated v. Employers Health Insurance Company*, 240 F.3d 982, 997 (11th Cir. 2001). Defendant cannot evade review of its interpretation of the Plan by failing to provide any definition of a crucial term in advance of litigation.

In the absence of any notice to plan participants regarding how the Reasonable and Customary amount is determined, any method of calculation that contradicts a plain reading of Plan language is arbitrary. This is because, with no definition in the Plan, Defendant could interpret that term however it wished, providing no recourse for Plan participants whose benefits may be reduced according to a rationale which is not disclosed to them. *See Shelby Cty.*, 203 F.3d at 934 ("In interpreting the provisions of a plan, a plan administrator must adhere to the plain meaning of its language, as it would be construed by an ordinary person." (citing *Callahan v. Rouge Steel Co.*, 941 F.2d 456, 459–60 (6th Cir. 1991))). Consequently, the Court must address whether Defendant's use of its own negotiated in-Plan fee schedule to determine the Reasonable and Customary rate for Out-of-Plan providers comports with a plain reading of the Plan language. *Geddes* provides guidance with respect to a plain reading of the Plan.

Plaintiffs cite *Geddes* in support of their contention that "reasonable and customary" reimbursement amounts must be determined with reference to the provider's rate in the relevant geographic area. Both the Tenth Circuit in *Geddes*, and the Eleventh Circuit in *HCA Health Service of Georgia, Incorporated v. Employers Health Insurance Company*, 240 F.3d 982, 997 (11th Cir. 2001), use a "reasonable, prudent person" standard in order to determine whether

34

an interpretation of plan language is arbitrary and capricious. *Geddes*, 469 F.3d at 930; *HCA Health*, 240 F.3d at 997.[11] The Sixth Circuit has not considered whether calculating the reasonable and customary rate based on negotiated, in-network rates is arbitrary and capricious. Particularly in view of the facts of this case, where the Plan itself is silent on the how the reasonable and customary rate is calculated, the Court finds the approach of the Tenth and Eleventh Circuits to be persuasive.

Defendants oppose reliance on *Geddes* for the same reasons they have repeated throughout this dispute: that Plaintiffs knew that going out-of-network would mean lower levels of reimbursement. Dkt. 17 at Pg ID 601 ("The Plan expressly provides for reimbursement of out-of-network services at rates that are lower than in-network services."). Again, there is no dispute that the Plan covers in-network surgery at 100%, while only covering out-of-network procedures at 60% of the "reasonable and customary rate." Dkt. 11 at Page ID 422 (AR, D-000155).

---

[11] Defendant states that *HCA Health Services* was overruled "by implication" in 2008 by *Doyle v. Liberty Life Assurance Company of Boston*, 542 F.3d 1352 (11th Cir. 2008). In *Doyle*, the Eleventh Circuit found that the district court applied the correct standard of review to a benefit denial where the plaintiff alleged a conflict of interest. *Doyle*, 542 F.3d at 1360. The court did not discuss whether calculation of usual, customary and reasonable rates with reference to in-network negotiated rates was arbitrary and capricious, so it has no bearing on the pertinent holding of *Geddes*.

The section of the Plan called "Benefits in Brief" contains a summary table describing the "out-of-plan" surgery benefits as follows:

| Benefit Level: | In Plan | | Out of Plan* | | |
|---|---|---|---|---|---|
| **Provider Network:** | Domestic Network | McLaren Health Advantage Network | Supplemental Network | Secondary Network (PPOM, Global Care, and specifically designated providers) | All other Hospitals & Physicians |
| **Surgical Services** | | | | | |
| Surgery (includes all related surgical services) | Covered at 100% | Covered at 100% | After deductible is met, covered at 60% | After deductible is met, covered at 60% | After deductible is met, covered at 60% of Reasonable and Customary Amount |
| Anesthesia | Covered at 100% | Covered at 100% | After deductible is met, covered at 60% | After deductible is met, covered at 60% | After deductible is met, covered at 60% of Reasonable and Customary Amount |

To an ordinary person looking at the table setting out the Plan's benefits, it is clear that in-plan surgery is covered at 100% while out-of-network surgery will be reimbursed at 60% of the Reasonable and Customary amount. The term "Reasonable and Customary" is undefined. What is certainly not clear is that the coverage rate for out-of-network providers is calculated by taking 60% of *the median amount Defendant has negotiated to pay in-network providers*. Defendant's protestations that imposing a market rate standard would "ignor[e] Plan terms," Dkt. 17 at Pg ID 603 are unavailing because the Plan *has no terms* defining Reasonable and Customary amount. Plaintiffs do not seek reimbursement of the entire out-of-

network charges, nor are they requesting a higher *rate* of reimbursement—that is, they are not asking for 70% of the Reasonable and Customary amount as opposed to the 60% the Plan allows. Rather, Plaintiffs contend that the Plan's failure to disclose the base amount from which the reimbursement rate is calculated requires the application of a rate that a reasonable person would expect based on the plain meaning of the term, rather than based on the in-Plan negotiated rate. Defendant's arguments against the applicability of *Geddes* are inapposite.

It is also worth noting that a reasonable person viewing the Plan's benefit levels would see that for both "In Plan" and certain "Out of Plan" providers who are part of the McLaren larger network, the reimbursement levels are set at 100% (for In-Plan) and at 60%—after deductible is met—(for certain Out-of-Plan) providers. For these two columns, though it is not expressly stated, the percentage of coverage clearly refers to the amount the provider charges. For Out-of-Plan providers who are not part of any McLaren network there is a final column. That column says that the 60% covered refers to a "reasonable and customary amount," not to the amount that is actually charged. An ordinary person reading this table would be unlikely to assume that "reasonable and customary amount" would be derived from the rates for in-Plan providers (which are covered at 100% and in a different column), but

would be more likely to understand that it must be derived from a distinct and independent source that was being used to estimate reasonable and customary amounts.[12]

Under the facts of this case, where the Plan failed to provide a definition of Reasonable and Customary and where no explanation of the meaning of this term was provided during the benefit or appeal process, the Court finds that the Plan's denial of benefits based on its undisclosed interpretation of this term was arbitrary and capricious. On remand, the plain reading of the term "reasonable and customary amount" should be used in providing a full and fair consideration of the claim, using a definition that is based on the prevailing market rate generally charged for the service in the relevant geographic area.

ii.  *Defendant's failure to consider modifier 22*

The record is also clear that Plaintiffs submitted a claim to Defendant for billing code 48232 with modifier 22. Dkt. 11 at Pg ID

---

[12] The *Geddes* court noted this same issue where the Plan at issue distinguished between the in-plan rate and the customary rate. It explained, "In fact, by juxtaposing the 'contracted amount' for in-network providers with the 'usual and customary' charge levied by out-of-network physicians—and by promising to cover both—the text of the Plan directly implies the two rates are distinct, and that out-of-network expenses will be covered at the prevailing market rate." 469 F.3d at 930.

297 (AR, D-000030). Plaintiffs used a standard claim form, approved by the National Uniform Claim Committee, with box 24D filled in with 22 as the modifier to billing code 43282. *Id.* Both the benefit decision, Dkt. 11 at Pg ID 298; 309 (AR, D-000031; D-000042), and the appeal denial mentioned only billing code 48232 (without modifier 22). *Id.* at Pg ID 314 (AR, D-000047). Indeed, the term "modifier 22" is nowhere to be found in any of the materials Defendant sent to Plaintiffs regarding the claim.

A decision that ignores evidence or information in the record falls short of providing a "reasoned explanation" that survives arbitrary and capricious review. *See, e.g., Lanier*, 692 F. Supp. 2d at 777–78; *see also Houston*, 246 F. App'x at 299 ("If the administrative record evidences a 'reasoned explanation' for an administrator's decision, the decision is not arbitrary or capricious." (quoting *Williams v. Int'l Paper Co.*, 227 F.3d 702, 712 (6th Cir. 2000))). The record does not show that Defendant considered the complete billing code Plaintiffs submitted—a billing code for which Dr. Frantizides provided an explanation of the increased difficulty of the procedure in Plaintiffs' appeal. Dkt. 11 at Pg ID 277 (AR, D-000010). Defendant's appeal denial did not even discuss the issue that Plaintiffs had actually appealed: the calculation of the reasonable and customary fee with modifier 22 considered. *Id.* at Pg ID 314 (AR, D-000047). Defendant

at times characterizes Plaintiffs' modifier 22 arguments as an appeal for 100% reimbursement, Dkt. 17 at Pg ID 603, or as an attempt by Dr. Frantzides' to "rate the necessity of a particular procedure" or obtain a higher rate of reimbursement for Plaintiffs. Dkt. 17 at Pg ID 604. None of these characterizations are accurate, and Defendant's failure to recognize or discuss a commonly used billing code is not explained or justified in the record.[13]

Defendant's initial and appeal decisions failed to address Plaintiffs' actual claim and were therefore arbitrary and capricious. Ignoring evidence in the administrative record by not mentioning a modifier and failing to explain why the modifier was not considered is a failure to provide a reasoned explanation. The Court remands Plaintiffs' claim to the Plan Administrator for full and fair consideration of the claim, including the modifier 22 on the billing code.

---

[13] In fact, the appendix of modifier 22 to a billing code reflects increased complexity of a particular procedure, and is frequently used in order to justify a higher-than-normal charge by the provider—in other words, to show that the provider's charge *is* reasonable and customary given the particularities of the procedure performed. *See* Medicare Claims Processing Manual, 20.4.6 Payment Due to Unusual Circumstances (Modifiers "-22 and "-52") (May 31, 2018) https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/clm104c12.pdf.

### c. Statutory penalties under ERISA

Plaintiffs have requested statutory penalties under ERISA §502(c), which grants courts discretion to award such penalties where a plan administrator fails or refuses to comply with a claimants request for information. Dkt. 6 at Pg ID 138. Specifically, the provision states:

> Any administrator . . . (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper . . . ."

29 U.S.C. 1132(c)(1).

Plaintiffs argue that because the regulations under ERISA § 503—providing a "full and fair review" of benefits claims—require that an administrator provide claimants, upon request, with "copies of, all documents, records, and other information relevant to [their] claim," they are entitled to statutory penalties. Dkt. 6 at Pg ID 138 (citing 29 U.S.C. § 1132(c)(1)).

Most of the federal circuit courts agree that a violation of § 503 regulations "does not trigger monetary sanctions under § 502(c). *Medina v. Met Life Ins. Co.*, 588 F.3d 41, 48 (1st Cir. 2009); *accord VanderKlok v. Provident Life and Acc. Ins. Co.*, 956 F.2d 610, 618 (6th Cir. 1992). Under ERISA §104(b)(4), the documents an administrator is obligated to turn over are: "the latest updated summary plan description, plan description, and the last annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. §1024(b)(4). This list does not include a copy of the benefit calculations. *Cortez v. Prudential Ins. Co. of Am.*, 2008 WL 4372638, *3–4 (W.D. Mich. 2008). In any event, § 502(c) applies only to an administrator's refusal to provide such information upon the request of the plan subscriber. As noted above, Plaintiffs never requested a copy of the negotiated fee schedule in the administrative record before the Court. Consequently, Plaintiffs are not entitled to statutory penalties.

## V. Conclusion

For the foregoing reasons, Plaintiffs' Motion for Judgment on the Administrative Record is **GRANTED**. Defendant's Motion for Judgment on the Administrative Record is **DENIED**. The case is remanded to the Plan Administrator for full and fair consideration of Plaintiffs' claim.

**SO ORDERED.**

Dated: September 20, 2018

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

### Certificate of Service

I hereby certify that this Order was electronically filed, and the parties and/or counsel of record were served on September 20, 2018.

s/A. Chubb
Case Manager