# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

PAUL ZACK and JUDITH ZACK,

    Plaintiffs,

v.

McLAREN HEALTH ADVANTAGE, INC.,

    Defendant.

Case No. 17-11253
Hon. Terrence G. Berg

## ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEY'S FEES

### I.  Introduction

Plaintiffs Paul and Judith Zack won their motion for judgment on the administrative record in this case under the Employee Retirement Income Security Act (ERISA) regarding the amount of reimbursement Defendant McLaren Health Advantage paid for Ms. Zack's hiatal hernia repair. ECF No. 19. This Court made three findings against Defendant in that Order. First, the Court found that Defendant violated ERISA § 503 (29 U.S.C. § 1133) and its accompanying regulations by failing to notify Plaintiffs of its pricing methodology and failing to disclose its pricing schedule when it denied Plaintiffs' benefit and benefit appeal. ECF No. 19 PageID.678. Second, the Court found that Defendant's use of its own negotiated

1

rates to determine the Reasonable and Customary fee for procedures was arbitrary and capricious. *Id*. Third, the Court found that Defendant's failure to process Plaintiffs' claim with the correct and complete billing code was also arbitrary and capricious. *Id*. Plaintiffs now seek an order requiring Defendant to pay Plaintiffs' attorney's fees and costs under ERISA § 502(g)(1) (29 U.S.C. § 1132(g)(1)). For the reasons set forth below, Plaintiffs' Motion for Attorney's Fees is **GRANTED**.

## II. Background

The facts of this case are set forth in full in the Court's September 20, 2018 Order. Briefly, this dispute arises out of Plaintiff Judith Zack's hiatal hernia repair surgery, which Dr. Constantine Frantzides performed on March 8, 2016. Dr. Frantzides did not participate in McLaren Health Advantage. Dr. Frantzides charged Ms. Zack $27,986.00 for the laparoscopic hiatal hernia repair and the simultaneous esophagus dilation. Dr. Frantzides used billing codes 43282-22 and 43450 to describe the procedures. Modifier 22, appended to billing code 43282, is frequently used to denote billing for a particularly complex procedure.

Plaintiff submitted her benefits claim to Defendant after the procedure. Under Plaintiff's insurance plan, Defendant would pay 60% of the "Reasonable and Customary" amount of any out-of-net-

work procedure. The plan documents did not define the term "Reasonable and Customary." Defendant ultimately determined that the Reasonable and Customary amount for Plaintiff's procedure was $1,547.41. Defendant never disclosed to Plaintiff, in the initial benefit determination or in the denial of the benefit on appeal, the methodology for determining the Reasonable and Customary amount. Eventually, in Defendant's Cross-Motion for Judgment on the Administrative Record, it disclosed that "the reimbursement amount is a median of what McLaren pays its In-Plan providers for that kind of service." ECF No. 15 PageID.463. Nothing in the administrative record indicates that Defendant ever considered modifier 22, appended to the billing code, in its determination of the Reasonable and Customary amount.

Throughout this dispute, Defendant has failed to address the crux of Plaintiffs' argument: the methodology and accuracy of Defendant's determination of the Reasonable and Customary amount for Plaintiff's procedure. Even after the Court pointed out this error in its September 20 Order, Defendant continues to state, incorrectly, that Plaintiffs' claim requests 100% of the Reasonable and Customary amount. ECF No. 21 PageID.737 ("Plaintiffs contended that the Plan must reimburse her for that entire amount, notwithstanding that failure [sic] to cite any Plan language providing for 100% reimbursement of out-of-network services."). One cannot tell

3

for certain, in light of the arguments in Defendant's recent filing, whether it fully reviewed the Court's September 20 Order.[1]

### III. Standard of Review

The parties essentially agree on the standard of review for an award of attorney's fees under ERISA. The statute specifically authorizes award of a "reasonable attorney's fee and costs of action" to either party. 29 U.S.C. § 1132(g)(1). District courts have broad discretion to award attorney's fees and costs, so long as the requesting party has shown "some degree of success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)).

If a party achieves some degree of success on the merits, courts analyze five factors to determine whether an award of attorney's fees and costs is appropriate:

---

[1] For example, Defendant's brief purports to list five aspects of the September 20 ruling, but only two of these are correct. Defendant states that the Court rejected Plaintiffs' procedural challenge. This is incorrect because Plaintiffs did not bring a procedural challenge. ECF No. 19 PageID.676. Defendant further states that the Court rejected Plaintiffs' argument that Defendant violated ERISA's notice and document production requirement. In fact, the Court found the opposite—that Defendant violated ERISA's notice and document production requirements by failing to notify Plaintiffs of its pricing methodology and failing to disclose its pricing schedule as part of Defendant's benefit and appeal denials. ECF No. 19 PageID.691. Finally, Defendant contends that the Court rejected Plaintiffs' claim for an award of benefits. This is also incorrect; Plaintiffs did not *ask* for an award of benefits so there was no such claim to reject. ECF No. 19 PageID.677. It is unclear whether these mischaracterizations of the Court's order arise from an intentional form of mischief or careless draftsmanship; the former perhaps meriting sanctions but the latter merely censure or rebuke.

4

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Secretary of Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985).

## IV. Analysis

Plaintiffs have plainly achieved some degree of success on the merits. The Court found that Defendant had violated ERISA and acted arbitrarily and capriciously in two ways and granted Plaintiff's Motion for Judgment in its Favor on the Administrative Record. Therefore, the Court analyzes each of the five *King* factors below and finds that each weighs in favor of an award of Plaintiffs' attorney's fees and costs.

### a. The degree of the opposing party's culpability or bad faith

This factor weighs in favor of the party requesting attorney's fees where "a plan administrator engages in an inadequate review of the beneficiary's claim or otherwise acts improperly in denying benefits." *Shelby Cty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 377 (6th Cir. 2009). Defendant claims that a finding that

5

a plan administrator's decision was arbitrary and capricious is insufficient on its own to show culpability or bad faith. ECF No. 21 PageID.752. But this characterization of the law is misleading. In fact, the very case Defendant cites for this proposition states, "[T]his court's caselaw by no means *precludes* a finding of culpability or bad faith based only on the evidence that supported a district court's arbitrary-and-capricious determination." *Gaeth v. Hartford Life Ins. Co.*, 538 F.3d 524, 530 (6th Cir. 2008). Contrary to Defendant's assertion, a plaintiff *can* "rest solely on a ruling that a denial of benefits was 'arbitrary or capricious' to support a claim of 'bad faith or culpability.'" ECF No. 21 PageID.742. The evidence that supported the arbitrary and capricious ruling merely must also support that the decision was made in bad faith or with culpability. And here, it does.

As noted above, Defendant repeatedly failed to address Plaintiffs' actual claim, which was that the Reasonable and Customary amount was calculated incorrectly. At every step, Defendant improperly characterized the nature of Plaintiffs' claim. And now, in its Response to this Motion, it improperly characterizes the Court's Order. This alone shows a kind of culpability or bad faith. In addition, Defendant failed to consider the complete billing code Plaintiffs submitted on their claim form, which is plainly an "inadequate review" of the claim. Defendants also based their Reasonable and

6

Customary amount calculation on a fee schedule that it did not even admit existed until its Motion for Judgment on the Administrative Record, despite Plaintiffs' challenging the calculation of that number at every stage. The Court found that this failure to disclose the fee schedule violated ERISA. Defendant's conduct—its refusal to tell Plaintiffs how it calculated the Reasonable and Customary amount and its recurring mischaracterization of what Plaintiffs were actually challenging—indicates that Defendant violated the statute willfully. Together, these facts weight the first *King* factor in favor of Plaintiffs.

### b. The opposing party's ability to satisfy an award of attorney's fees

Defendant does not dispute that it can satisfy an award of attorney's fees and costs. The Court finds this factor weighs in Plaintiffs' favor.

### c. The deterrent effect of an award on other persons under similar circumstances

Defendant again argues that it acted in good faith by denying Plaintiffs' benefit claim and appeal, claiming that awarding attorney's fees cannot deter "honest" mistakes such as this one. Defendant suggests that Plaintiffs' choice to visit an out-of-network provider somehow reduces or eliminates any deterrent effect that

might arise from awarding attorney's fees. This argument is unavailing.

First, the Plan *provided for a benefit for out-of-network physicians*. Defendant cannot therefore fault Plaintiff for choosing an out-of-network provider. This is particularly true because Plaintiff has never challenged the "reimbursement rates" for out-of-network providers. As the Court stated in its September 20, 2018 Order, "Plaintiffs did not challenge the fact that they would only be reimbursed at a rate of 60% of the Reasonable and Customary amount—they challenged the basis for determining that amount." ECF No. 19 PageID.671 n.4.

In addition, Judith Zack's surgery was particularly complex and required a provider with expertise. Dr. Frantzides had this expertise. Presumably, if an In-Plan provider had the same qualifications and willingness to perform the procedure, Plaintiffs would have chosen to visit that provider.[2] In any event, ERISA does not confer a disadvantage upon Plaintiffs merely because they exercised one option under their insurance plan rather than another. The fact that Plaintiffs could have foregone their option to see Dr. Fran-

---

[2] Plaintiffs state in their Reply that "The top in-network surgeon, on the other hand, could not offer [the procedure Judith Zack required]—only a much more invasive surgery with a significant risk of losing the esophagus." ECF No. 22 PageID.784 (emphasis and internal quotation marks omitted).

tzides, thereby eliminating the need for Defendant to make any decision at all on this claim, has no bearing on whether Defendant's decision was an honest mistake.

The Court finds that requiring Defendant to pay Plaintiffs' attorney's fees would encourage Defendant to disclose its fee schedule when it uses that schedule to deny a benefit. ERISA requires such disclosure. An award of attorney's fees would also encourage Defendant to consider the complete billing codes submitted in claims, also legally required pursuant to ERISA. And such an award would encourage Defendant to use the relevant geographic location and historic pricing data to determine the Reasonable and Customary amounts for procedures, which the Court found is legally required where the plan documents do not define Reasonable and Customary. The third *King* factor therefore weighs in favor of Plaintiffs.

### d. Whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA

In Defendant's own words, "The weight of the fourth *King* factor generally turns on its value to the development and understanding of benefits law as a whole, or as it pertains to others under the same plan." ECF No. 21 PageID.745. The Court's Order granting Plaintiffs' Motion for Judgment on the Administrative Record made two

9

key developments for benefits law. First, the Court found that ERISA's notice and document production requirements extend to a Reasonable and Customary amount fee schedule when that fee schedule is used to deny a benefit. In so doing, the Court reasoned that this fee schedule is a "criterion . . . relied upon in making the adverse determination." 29 C.F.R. § 2560.503-1(g)(1)(v)(A). It does not appear that this question has been addressed by another court in the Sixth Circuit.

Second, the Court determined that, where a plan does not define the term Reasonable and Customary amount, plan administrators must use the ordinary plain meaning of that term: the amount ordinarily charged in the same geographic area for the same type of procedure. The Court followed the reasoning of the Circuit Courts of Appeal for the Tenth and Eleventh Circuits.[3] Again, it does not appear that any court in the Sixth Circuit has addressed this issue.

Deciding these two questions provides some further development of benefits law. Consequently, the Court finds that the fourth *King* factor weighs in favor of Plaintiffs.

### e. The relative merits of the parties' positions

---

[3] *See Geddes v. United Staffing Alliance Employee Medical Plan*, 469 F.3d 919, 931 (10th Cir. 2006); *HCA Health Serv. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 997 (11th Cir. 2001).

Defendant's assertion that it has *also* achieved some success on the merits is unfounded. The Court found for Plaintiffs on all three of Plaintiffs' claims in its Motion for Judgment on the Administrative Record and awarded Plaintiffs the relief they requested: a remand to the Plan Administrator for a proper determination of the Reasonable and Customary amount. The final *King* factor weighs in favor of Plaintiffs.

V.   **The Amount of Claimed Fees and Costs**

Parties agree that "the 'lodestar' approach is the proper method for determining the amount of reasonable attorneys' fees" in ERISA cases. *Bldg. Servs. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995). Using the lodestar approach, "the court multiplies a reasonable hourly rate by the proven number of hours reasonably expended on the case by counsel." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004). In this case, Plaintiffs' counsel claims he has expended 39.1 hours at a rate of $300 per hour. Plaintiff also requests $790.91 in costs for the filing fee, service, and legal research.

In response, Defendant raises several arguments. First, it argues that $300 per hour is an excessive rate because there is no evidence that Plaintiffs paid that rate—implying, though not stating, that Plaintiffs paid less or paid nothing at all. But whether and

11

what Plaintiffs paid or agreed to pay is irrelevant. The statute authorizes payment of "a reasonable attorney's fee"—there is no language requiring that the plaintiff pay that fee. At least one court has specifically found this to be true in the context of 29 U.S.C. § 1132(g). *See Moriarty v. Svec*, 233 F.3d 955, 966 (7th Cir. 2000) ("If an attorney charges most clients a high fee, and then represents a client pro bono or for a reduced fee, that attorney's presumable market rate in the pro bono or reduced-fee case is still the attorney's normal high rate.").

Moreover, as Plaintiff points out, Plaintiff's counsel's rate is reasonable according to the State Bar of Michigan's Economics of Law Practice in Michigan, a publication that courts in this district routinely use to determine the reasonableness of requested fees. *See, e.g., Bell v. Prefix, Inc.*, 784 F. Supp. 2d 778, 783 (E.D. Mich. 2011). The 2017 iteration of the Economics of Law Practice in Michigan places $300 per hour just above the median for managing partners, at the median for equity partners, and just below the median for non-equity partners. $300 is between the median and seventy-fifth percentiles for attorneys practicing in downtown Detroit. It is below the median for attorneys practicing plaintiff-side insurance law and just slightly above the median for business and commercial litigation. Given the available data, $300 per hour for Plaintiff's counsel is a reasonable rate.

Defendant next argues that Plaintiff's hours are excessive and not recorded with adequate specificity. But the examples from case law relied upon by Defendant are distinguishable from what Plaintiff's counsel actually submitted. Defendant cites a First Circuit case that upheld a district court's finding that "failing to include some description of the subject matter of the task made it impossible to determine if the time factor allocated was appropriate or excessive." ECF No. 21 PageID.750. But here, Plaintiffs' counsel *did* provide descriptions of the subject matter of each task. A representative entry in the billing sheet reads: "Research and preparation of complaint, including comprehensive review of summary plan description and correspondence between parties during appeal process." ECF No. 20-1 PageID.730. Upon careful review of the billing sheet, the Court finds that the hours billed are reasonable in proportion to the case and the specific tasks listed.

Finally, Defendant argues that Plaintiffs should not be able to recover the costs their attorney passed on to them for legal research on Westlaw. Defendant cites a case from the Northern District of Illinois that states that such costs cannot be passed on to clients because those costs are part of overhead. ECF No. 21 PageID.751. But "Sixth Circuit law is unsettled regarding whether costs for electronic legal research are properly awarded or whether these costs should be considered part of the overhead included in the attorney's

hourly fee." *Smith v. Service Master Corp.*, 592 F. App'x 363, 367 (6th Cir. 2014). The *Smith* court concluded that an attorney can pass on a per-search access fee for online legal research to a client, so long as that is "general practice in the local legal community." *Id.* at 368. Additionally, the *Smith* court found that an entry in the billing sheet that states only the date and "Westlaw charges" was inadequate to establish that the "expenses were actually incurred in connection with the litigation." *Id.* at 369.

Here, Plaintiffs have not provided any evidence to establish that passing on the costs of online legal research are local practice, beyond their bare assertion in the Reply that this is true. But "[a]n attorney's unsworn statements in a brief are not evidence." *Hoag v. Comm'r of Social Security*, No. 1:09-CV-803, WL 458872, at *3 (W.D. Mich. Feb. 3, 2010) (quoting *Duha v. Agrium, Inc.*, 448 F.3d 867 (6th Cir. 2006)). Plaintiffs' counsel also has not provided the level of detail required by the *Smith* holding—that is, more than simply a billing sheet entry that lists the date and dollar amount labeled "Westlaw charges."

Because Plaintiffs have not adequately justified the online legal research charges, the Court will not award the $372.27 Plaintiffs' counsel billed for those charges. The Court finds that Plaintiffs' counsel has adequately justified all other fees and costs.

## VI. Conclusion

For the foregoing reasons, Plaintiffs' Motion for Attorney's Fees and Costs is GRANTED. Defendant is ordered to pay $12,148.64.

**SO ORDERED.**

Dated: December 13, 2018

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

### Certificate of Service

I hereby certify that this Order was electronically filed, and the parties and/or counsel of record were served on December 13, 2018.

s/A. Chubb
Case Manager